FILED
CLERK, U.S. DISTRICT COURT

MAY 14

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROSELINA HEREDIA,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | No. ED CV 07-750-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Plaintiff filed this action on June 29, 2007, seeking review of the Commissioner's denial of her application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 16, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 7, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 26, 1960. [Administrative Record ("AR") at 53, 56, 544.] She has little to no schooling.[1] [AR at 567.] Plaintiff has past relevant work experience as an orange picker and vitamin packer. [AR at 24, 27, 562, 811-12.]

On July 8, 2003, plaintiff protectively filed her application for Supplemental Security Income ("SSI") payments, alleging that she has been unable to work since June 6, 2000,[2] due to arthritis, shoulder pain, knee problems, headaches, back pain, and depression. [AR at 19, 26, 544-46, 561.] By December 3, 2003, plaintiff also alleged that pain medication was causing stomach problems. [AR at 19, 593-96.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 513-16, 518-24, 527.] The hearing was held on December 9, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 808-20.] A vocational expert also testified. [AR at 818-20.] On February 24, 2006, the ALJ determined that plaintiff was not disabled. [AR at 18-28.] When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. [AR at 5-9.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

/

---

[1] As noted by the ALJ in the body of the decision, plaintiff reported having a third grade education in her Supplemental Security Income application, but stated at the hearing that she had no schooling. [AR at 24, 567, 810.] In his Findings section, the ALJ concluded that plaintiff had "no formal education." [AR at 27.]

[2] Pursuant to 20 C.F.R. § 416.335 (stating that SSI benefits may not be paid for any period preceding the application filing date), the ALJ held that plaintiff would be eligible for SSI benefits only "on or subsequent to her application filing date of July 8, 2003." [AR at 20, 26.] Plaintiff does not contest this finding.

evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828, n.5; Drouin, 966 F.2d at 1257.

B.   **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since her application filing date.[3] [AR at 20, 26.] At step two, the ALJ concluded that plaintiff has "severe" impairments including "right shoulder impingement syndrome, status post arthroscopic surgery; minimal-to-mild degenerative changes in the lumbar spine; gastroesophageal reflux disease; and muscle tension headaches."[4] [AR at 21, 26.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 22, 26.] The ALJ further found that plaintiff retained the residual functional capacity

---

[3] As previously noted, the ALJ used plaintiff's application filing date, rather than her alleged disability onset date, because SSI benefits cannot be paid for any period preceding the application filing date. See 20 C.F.R. § 416.335.

[4] The ALJ also found that plaintiff has "the nonsevere psychiatric impairment of pain disorder associated with psychological factors and general medical condition." [AR at 22, 26.]

4

("RFC")[5] to "lift/carry twenty pounds occasionally, lift/carry ten pounds frequently, stand/walk for six hours of an eight hour day, and sit for six hours of an eight hour day with the nonexertional limitations of being able to climb, stoop, or crouch occasionally; having to avoid concentrated exposure to extreme cold; and having to avoid concentrated exposure to vibration." [AR at 22, 26-27.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 24, 27.] At step five, the ALJ implicitly found that plaintiff has the RFC for "light exertion with the nonexertional limitations of being unable to perform overhead reaching with her right hand; having to alternate between sitting and standing at will; and being capable of simple and repetitive tasks" [AR at 25, 27], and that a significant number of jobs that plaintiff can perform, such as bench assembler and hand packer, exist in the regional and national economies. [Id.] Accordingly, the ALJ determined that plaintiff was not disabled and was not entitled to benefits. [Id.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to properly consider the opinion of an examining physician; and (2) failed to properly consider lay witness testimony. Joint Stipulation ("Joint Stip.") at 2-3. Specifically, plaintiff argues that the ALJ erred in failing to discuss examining physician Dr. Thomas R. Dorsey's limitation against plaintiff doing activities with her right upper extremity. Joint Stip. at 3-5. Plaintiff also contends that the ALJ erred in failing to discuss Third Party Daily Activities Questionnaires completed by plaintiff's niece, Yasenia Heredia, and plaintiff's sister, Blanca Heredia. Joint Stip. at 7. The Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

/
/
/

---

[5] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

A. **EXAMINING PHYSICIAN'S OPINION**

In evaluating medical opinions, case law and regulations distinguish between three types of physicians' opinions: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830; see 20 C.F.R. §§ 404.1502, 404.1527. As a general rule, the opinions of treating physicians are given greater weight than the opinions of other physicians "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe" the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); see 20 C.F.R. §§ 404.1527(d), 416.927(d). In turn, the opinions of examining physicians are afforded more weight than the opinions of nonexamining physicians. Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990), and Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)); see Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)). To properly reject an uncontradicted examining physician's opinion, the ALJ must provide "clear and convincing" reasons for doing so. See, e.g., Lester, 81 F.3d at 830. If the examining physician's opinion is contradicted, then the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to properly reject the opinion. Lester, 81 F.3d at 830-31; see Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999).

The determination of a plaintiff's RFC will be upheld if the ALJ applied the proper legal standard to his overall decision and if the RFC determination is "supported by substantial evidence." See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). Substantively speaking, "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record, such as: medical history...[and] medical source statements." Social Security Ruling 96-8p[6] (emphasis in

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the

original); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing SSR 96-8p) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records"); Gastil v. Astrue, 2008 WL 754199, at *7 (D. Kan. Mar. 18, 2008) ("According to SSR 96-8p, the ALJ must always consider and address medical source opinions.").

Harmless error analyses apply in Social Security cases, Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.2005)), and an ALJ's decision will not be reversed for harmless error. Burch, 400 F.3d at 679 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.1991)). An error is harmless if it is "inconsequential to the ultimate nondisability determination." Stout, 454 F.3d at 1055 (citations omitted); Robbins, 466 F.3d at 885 (citing Stout, 454 F.3d at 1055-56). The Ninth Circuit has applied harmless error in numerous social security contexts. For example, in Stout, the court held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056. In Batson, the court applied harmless error in the context of a claimant's testimony, noting that "[a]ny error the ALJ may have committed in assuming that [the claimant] was sitting while watching television, to the extent that this bore on an assessment of ability to work," was harmless because the ALJ's conclusion of non-credibility was nonetheless supported by substantial evidence. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004). Additionally, in Curry, the court employed the harmless error rule in the context of the plaintiff's age and education. Curry, 925 F.2d at 1131. Specifically in terms of RFC determinations, it is harmless error when the ALJ fails to discuss relevant evidence if the failure does not affect the ALJ's final decision. In deciding that the plaintiff could do his past relevant work in Perkins v. Astrue, 535 F.Supp.2d 986, 991 n.3 (C.D. Cal. 2008), the ALJ did not include an examining physician's limitation against the plaintiff working at heights or around heavy

---

Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

machinery in the RFC determination. Nevertheless, any error was found to be harmless because none of the plaintiff's past relevant work involved working at heights or around moving machinery. Id. See also Nguyen v. Comm'r of Soc. Sec., 2008 WL 859425, at *10 (E.D. Cal. Mar. 28, 2008) (finding that it was harmless error when the ALJ failed to follow the regulations' special procedures for evaluating mental problems because no reasonable ALJ -- even if he had "strictly followed" the procedures -- would have arrived at a "different disability determination with respect to plaintiff's mental problems").

Plaintiff argues that the ALJ failed to properly consider the opinion of examining physician Dr. Thomas R. Dorsey. Joint Stip. at 3-5. On February 20, 2004, Dr. Dorsey conducted an orthopaedic examination of plaintiff. [AR at 740-43.] Dr. Dorsey noted that plaintiff had a right shoulder rotator cuff repair in 1994 and appeared to have undergone a Mumford procedure in 2002.[7] [AR at 740, 743.] Additionally, Dr. Dorsey noted that plaintiff showed a decreased range of motion in her right shoulder. [AR at 742.] According to Dr. Dorsey, plaintiff had normal 5/5 motor strength in her "bilateral upper and lower extremities." [Id.] Dr. Dorsey concluded that, while plaintiff should do "no overhead activities with the right upper extremity," she generally had an RFC for medium exertion -- i.e., plaintiff could lift/carry and push/pull "50 pounds occasionally and 25 pounds frequently;" stoop and crouch occasionally; and "stand, walk, and sit for six hours out of an eight-hour day, with standard breaks."[8] [AR at 743.] Plaintiff argues that the ALJ did not "state whether he accepted or rejected" Dr. Dorsey's limitation against plaintiff using her upper right extremity. Joint Stip. at 4-5.

Even though the ALJ did not explicitly state that he was accepting Dr. Dorsey's opinion, his substantial inclusion of Dr. Dorsey's findings within the decision is sufficient to show his

---

[7] The "Mumford procedure" to which Dr. Dorsey refers appears to be the distal clavicle resection and open acromioplasty plaintiff underwent on September 25, 2002, at the Moreno Valley Community Hospital. [AR at 632-33.]

[8] Medium "work" (or "exertion") consists of "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." If a person can do medium work, then she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

acceptance of Dr. Dorsey's opinion.[9] For example, the ALJ noted Dr. Dorsey's observation that plaintiff had a "right rotator cuff repair" and "an apparent Mumford procedure." [AR at 21.] The ALJ further stated that Dr. Dorsey found plaintiff to have "a limited lumbar range of motion." [Id.] The ALJ also indicated that Dr. Dorsey found plaintiff to have an RFC "for a limited range of medium exertion." [AR at 22.] Importantly, when showing why he did not find plaintiff credible, the ALJ contradicted plaintiff's assertions with a number of Dr. Dorsey's findings.[10] [AR at 23.]

Plaintiff is correct that when the ALJ discussed plaintiff's RFC, he failed to specifically mention Dr. Dorsey's limitation against plaintiff using her upper right extremity. [AR at 22, 26-27.] This limitation constitutes relevant evidence because it was included in Dr. Dorsey's Medical Source Statement [AR at 743], and therefore should have been considered during the RFC determination. See SSR 96-8p. However, any error in this omission was harmless. While the ALJ failed to discuss Dr. Dorsey's limitation in his RFC determination, he clearly included the limitation in the hypothetical he posed to the vocational expert ("VE") during plaintiff's hearing.[11] [AR at 819.] The VE responded that a person with plaintiff's limitations could be a bench

---

[9] The only opinion of Dr. Dorsey that the ALJ rejected was Dr. Dorsey's opinion that plaintiff is capable of medium exertion. [AR at 743.] Instead, the ALJ found her to have an RFC for only light exertion, which is even more restrictive than that found by Dr. Dorsey. [AR at 22, 26-27.] As noted by the ALJ, light exertion consists of lifting/carrying twenty pounds occasionally, lifting/carrying ten pounds frequently, standing/walking for six hours in an eight hour day, and sitting for six hours in an eight hour day. See 20 C.F.R. §§ 404.1567(b), 416.967(b); [AR at 22.] The ALJ also stated that plaintiff had the "nonexertional limitations of being able to climb, stoop, or crouch occasionally; having to avoid concentrated exposure to extreme cold; and having to avoid concentrated exposure to vibration." [AR at 22.]

[10] The ALJ stated that, in contrast to plaintiff's claims of physical weakness, "Dr. Dorsey found [plaintiff] to have normal 5/5 motor strength to her upper and lower extremities." [AR at 23.] The ALJ also noted that, in contrast to plaintiff's arthritis claim, Dr. Dorsey found her to "have a normal range of motion to her upper and lower extremities, except for her right shoulder." [AR at 24.]

[11] The ALJ asked the VE: "Assume you have a young individual as defined in regulations, no education, has the ability to communicate in English and read and write in Spanish, some ability to read and write in English. Prior work experience, the experience that you've indicated is medium and unskilled. If there were limitation to light work as defined in the Social Security Regulations *with no overhead activity with the right upper extremity*, and there were needs to alternate positions at will and say simple repetitive tasks, would there be any work activity that exists nationally or locally and could be performed?" [AR at 819] (emphasis added).

assembler or a hand packer. [Id.] The ALJ ultimately adopted this conclusion as his own. [AR at 25, 27.] Consequently, while the ALJ did not formally discuss Dr. Dorsey's right upper extremity limitation when conducting the RFC determination, the limitation was nonetheless taken into account when the ALJ made his ultimate disability decision. [Id.] Therefore, since the ALJ's failure to explicitly mention Dr. Dorsey's limitation within his RFC determination did not affect the final decision, any error was harmless. See Perkins, 535 F.Supp.2d at 991 n.3. Remand is not warranted on this claim.

**B.   LAY WITNESS TESTIMONY**

Under certain circumstances, Supplemental Security Income decisions can be reopened. See 20 C.F.R. § 416.1488. An SSI decision can be reopened "(a) [w]ithin 12 months of the date of the notice of the initial determination, for any reason; (b) [w]ithin two years of the date of the notice of the initial determination [for] good cause...; or (c) [a]t any time if it was obtained by fraud or similar fault."[12] 20 C.F.R. § 416.1488; see De La Rosa v. Astrue, 231 Fed.Appx. 582, 583 (9th Cir. 2007) (noting that it was proper to deny reopening a past decision because the request was untimely). An implied request to reopen a past decision exists if a new SSI application alleges a disability onset date within a previously adjudicated period. Hearings, Appeals and Litigation Law Manuel I-2-9-1.[13] For an implied reopening, the time between the two claims is calculated from the initial notice of determination for the previous claim to the current application's filing date. See HALLEX I-2-9-20. If a claim cannot be reopened, then res judicata causes its findings to be

/

/

---

[12] To determine if a decision was obtained by "fraud or similar fault," claimant's "physical, mental, educational, or linguistic limitations (including any lack of facility with the English language)" are taken into account. 20 C.F.R. § 416.1488(c).

[13] The Social Security Administration's Hearing, Appeals and Litigation Law Manuel ("HALLEX") is an internal manual, does not have the "force and effect of law," and is not binding on the court. See Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003) (citing Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000)). However, HALLEX provides interpretations of regulations. See McNatt v. Apfel, 201 F.3d 1084, 1088 (9th Cir. 2000).

binding on future decisions.[14] See Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985) (citing 42 U.S.C. § 405(h); Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985); Stuckey v. Weinberger, 488 F.2d 904 (9th Cir. 1973)).

Prior to filing her current SSI application, plaintiff filed an application for SSI benefits on August 4, 2000, alleging a disability onset date of January 1, 1998. [AR at 56-60.] After that claim was denied, a hearing was held and ALJ Varni returned an unfavorable decision on February 20, 2002. [AR at 36-47, 500-05, 785-807.] The Appeals Council denied plaintiff's request for review of that decision, thereby making it the final, binding decision of the Commissioner. [AR at 19, 508-10.] Plaintiff did not further contest that claim. The current ALJ addressed ALJ Varni's decision and concluded that, pursuant to 20 C.F.R. § 416.1488, it could not be reopened even though it alleged an onset date within the previously adjudicated period.[15] [AR at 20.] Plaintiff does not contest this conclusion, but nevertheless argues that the ALJ failed to properly consider lay witness testimony that was presented in connection with her prior application. Joint Stip. at 6-9. Specifically, plaintiff argues that the present ALJ did not address Third Party Daily Activities Questionnaires completed by plaintiff's niece, Yasenia Heredia, on October 28, 1998[16] [AR at 75-80], and plaintiff's sister, Blanca Heredia, on October 1, 2000. [AR at 120-25.] Joint Stip. at 7.

---

[14] Unless the plaintiff can prove a "colorable constitutional claim of due process violation," a district court may not review an ALJ's decision not to reopen a claim. See Udd v. Massanari, 245 F.3d 1096, 1098-99 (9th Cir. 2001) (citing Califano v. Sanders, 430 U.S. 99, 107-09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); Evans v. Chater, 110 F.3d 1480, 1482 (9th Cir. 1997)).

[15] In her current SSI application, plaintiff alleged a disability onset date of June 6, 2000. [AR at 544.] Since this alleged onset date is within the previously adjudicated time of her prior claim, plaintiff impliedly requested that her prior claim be reopened when she filed her current application. See HALLEX I-2-9-1. However, since more than two years had passed between the initial determination date of her prior claim (November 7, 2000) and the current filing date (July 8, 2003), and since and there was no evidence that ALJ Varni's decision was reached through "fraud or similar fault," the ALJ properly found that the August 4, 2000, claim could not be reopened. See De La Rosa, 231 Fed.Appx. at 583.

[16] Yasenia Heredia filled out another Third Party Daily Activities Questionnaire on January 28, 1999. [AR at 81-86.] Although plaintiff does not mention the ALJ's failure to discuss this Questionnaire, the Court will construe plaintiff's argument as incorporating this Questionnaire as well. See Joint Stip. at 7.

The ALJ's finding that plaintiff's prior claim could not be reopened was a proper conclusion. See HALLEX I-2-9-1.[17] Since the claim was not reopened, res judicata makes the prior ALJ's findings binding and the current ALJ was not required to consider evidence submitted in conjunction with that previous claim, including the Third Party Daily Activities Questionnaires. See Miller, 770 F.2d at 848 (stating that since a prior ALJ's determination that the plaintiff was not disabled as of January 19, 1979, was binding under res judicata, evidence dated before January 20, 1979, was irrelevant). Additionally, these Questionnaires are not probative because they concern observations and/or reports of plaintiff's activities years before the 2003 application date, and were completed by individuals who did not live with plaintiff. [AR at 75, 123]; see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (noting that the ALJ properly rejected testimony by the plaintiff's daughter "which was based solely upon her observations of [the plaintiff's] facial expressions, the manner in which [the plaintiff] walked, and the fact that she had dropped objects"). Furthermore, it would have been cumulative for the ALJ to discuss the information found in the Third Party Daily Activities Questionnaires because the ALJ did not find plaintiff credible and the Questionnaires were based, in part, on plaintiff's subjective complaints to her niece and sister.[18] See, e.g., Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996) ("To the extent [the ALJ] found Books's testimony concerning his disabling pain and physical limitations to be untenable...he necessarily found [Books's brother's] supporting testimony similarly not credible"); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (noting that "[t]he Secretary, however, need not discuss *all* relevant evidence presented to her. Rather, she must

---

[17] While the current ALJ mentioned some of ALJ Varni's determinations, he did not discuss the merits of the August 4, 2000, claim, and therefore did not constructively reopen the past claim. See Brink v. Sullivan, 1992 WL 202508, at *1 (E.D. Cal. Feb. 27, 1992) (noting that constructive reopening of a past claim exists when the ALJ reconsiders the merits of the earlier claim; but a threshold inquiry into the merits of the previous claim is insufficient to constitute a constructive reopening) (citing Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988)).

[18] For example, Yesenia Heredia wrote: plaintiff "always says she can't sleep at night, and that is very unconfortable [sic] because is painful," [AR at 75] and "[a]t the same time I'm filling out these papers my aunts [sic] right hand is swallen [sic] and she claims it hurts." [AR at 78.] Blanca Heredia wrote: "She says she is going to lose her sight. She says she's never going to walk again." [AR at 124.]

explain why 'significant probative evidence has been rejected.'") (citations omitted) (emphasis in original) [AR at 75-86, 120-25.] The Questionnaires are neither significant to nor probative in plaintiff's 2003 application. Accordingly, the ALJ did not err by not discussing the statements of the two lay witnesses, and remand is not warranted on this issue.

## VI.
## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal or, in the alternative, remand is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 14, 2008

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE